**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

LISA B.,

                                  Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

No. 5:21-CV-493
(CFH)

_____

**APPEARANCES:**

Osterhout Berger Disability Law, LLC
521 Cedar Way – Suite 200
Oakmont, Pennsylvania 15139
Attorney for plaintiff

Social Security Administration
J.F.K. Federal Building,
15 New Sudbury Street, Room 625
Boston, Massachusetts 02203
Attorney for defendant

**OF COUNSEL:**

HANNALORE B. MERRITT, ESQ.

NICOLE BOUDREAU, ESQ.

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

      Lisa B.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her applications for social security income and disability insurance benefits.

_____

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 5.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

See Dkt. No. 1 ("Compl."). Plaintiff moves for reversal and remand for the determination of benefits. See Dkt. No. 11. The Commissioner cross moves for judgment on the pleadings. See Dkt. No. 14. Plaintiff replies. See Dkt. No. 17. For the following reasons, the Commissioner's decision is affirmed.

## I. Background

On August 13, and 23, 2018, plaintiff filed Title II and Title XVI applications for disability insurance and social security income benefits, respectively. See T. at 232-39.[3] Plaintiff alleged a disability onset date of June 23, 2018. See id. at 232, 234. The Social Security Administration ("SSA") denied plaintiff's claims on October 30, 2018. See id. at 125.[4] Plaintiff requested a hearing, see id. at 133, and a hearing was held on January 13, 2020, before Administrative Law Judge ("ALJ") Charlie M. Johnson. See id. at 58-91. On March 3, 2020, the ALJ issued an unfavorable decision. See id. at 11-27. On March 1, 2021, the Appeals Council denied plaintiff's request for review. See id. at 1-6. Plaintiff timely commenced this action on April 28, 2021. See Compl.

## II. Legal Standards

### A. Standard of Review

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 10. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.
[4] The ALJ states that plaintiff's "claims were denied initially on October 24, 2018[,]" but the Notice of Disapproved Claim is dated October 30, 2018. T. at 11, 125.

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to

him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).

Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based on objective medical facts, diagnoses[,] or medical opinions inferable from [the]

facts, subjective complaints of pain or disability, and educational background, age, and

work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R.

§ 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has

an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since June 23, 2018, the alleged onset date.  See T. at 13.  At step two, the ALJ found that plaintiff had the following severe impairments: "osteopenia with mild degenerative changes of the hips and bursitis, osteopenia of the spine, residual effects of breast cancer, anxiety with

panic attacks, and depression." Id. at 14.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 15-18.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") "to perform medium work as defined in 20 C.F.R. [§§] 404.1567(c) and 416.967(c) except no fast-paced work."  Id. at 18.  At step four, the ALJ determined that plaintiff was "capable of performing past relevant work[.]"  Id. at 25.  The ALJ determined that plaintiff's work "as a Medical Transcriber, DOT 203.582-058, sedentary, skilled (SVP 5, performed light), and as a Child Daycare Worker, DOT 359.677-018, light, semiskilled (SVP 4, performed medium) . . . d[id] not require the performance of work-related activities precluded by [] [plaintiff's] residual functional capacity."  Id. at 25.  The ALJ did not continue to step five because he found that plaintiff was "'not disabled' at step four of the sequential evaluation process."  Id. at 27.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from June 23, 2018, through the date of th[e] decision[.]"  Id.

### IV. Arguments[5]

Plaintiff argues that the ALJ erred (1) in his RFC determination related to plaintiff's mental health limitations by failing to appropriately consider the opinions of her treating therapist; (2) by relying on the vocational expert's ("VE") testimony that plaintiff

---

[5] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

could perform past relevant work, claiming that the finding is inconsistent with the

Dictionary of Occupational Titles ("DOT"); and (3) by failing to consider her "strong work

history[]" as part of the credibility determination.  Dkt. No. 11 at 21; 3-20.  The

Commissioner argues that substantial evidence supports the ALJ's mental health RFC,

past relevant work, and consistency determinations.  See Dkt. No. 14.

## V. Discussion

### A. Mental Health RFC Determination

Plaintiff argues that the ALJ erred in limiting plaintiff to "no fast-paced work"

because the conclusion is not supported by substantial evidence where her treating

therapist, Miron Iosilevich, M.D., opined greater limitations, and the ALJ did not

expressly consider a second opinion submitted by Dr. Iosilevich.  Dkt. No. 11 at 13-16.

The Commissioner asserts the ALJ properly analyzed one of Dr. Iosilevich's opinions

and that the failure to analyze the second constitutes harmless error.  See Dkt. No. 14

at 9-13.

Under the relevant regulations, the Commissioner must consider all medical

opinions and "evaluate their persuasiveness" based on their supportability and

consistency, the author's relationship with the claimant and specialization, and "other

factors."  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Although the ALJ is not required to

assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or

she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the

medical opinions."  Id. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The ALJ

must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  Id. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).[6]  "If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."  Rivera v. Comm'r of the Soc. Sec. Admin., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted).

"[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The Court "defer[s] to the Commissioner's resolution of conflicting evidence."  Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted).  Therefore,

---

[6] The ALJ is not required to discuss the remaining factors unless he or she finds that two or more medical opinions are equally well supported and consistent with the record.  See 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, "whether there is substantial evidence supporting the [plaintiff's] view is not the question []; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis omitted). The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ." April B. v. Saul, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted). "An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision[.]'" Cichocki v. Astrue, 729 F.3d 172, 178, n.3 (2d Cir. 2013) (citing Mongeur, 722 F.2d at 1040).

### 1. ALJ Decision

In relevant part, the ALJ determined that plaintiff's "anxiety with panic attacks, and depression" were severe impairments. T. at 14. As part of his step-three analysis, the ALJ reviewed the four areas of mental functioning known as the "paragraph B" criteria. Id. at 15. The ALJ first determined that plaintiff had no limitations in her ability to understand, remember, and apply information. See id. at 15-16. In making this finding, the ALJ stated that "[t]he essence of [plaintiff's] allegations is that . . . mainly due to her anxiety and depression symptomatology coupled with her carpal tunnel, back, and foot pain, she is unable to engage in competitive work activity." Id. at 15. However, at the hearing, plaintiff "did not identify any particular deficits in her ability to"

understand, remember, and apply information.  Id.  The ALJ explained that "[a]cross the period at issue, attendant providers diagnosed and treated her for anxiety and depression[,]" (see T. at 359-372, 387-443, 468-601, 675-81, 687-93, 714-809, 826-40, 864-78, 892-965, 982-1051, 1486, 1500-1719, 1726-53), "[but] mental status exams regularly reflect[ed] unremarkable findings including intact memory and intact thought process."  Id. (citing T. at 393, 400, 407, 418, 425, 432, 717, 728, 739, 746, 753, 764, 771, 782, 789, 796, 807, 927, 984, 1047, 1203, 1211, 1221, 1229, 1237, 1245, 1255, 1269, 1275, 1283, 1293, 1304, 1313, 1326, 1337, 1352, 1365, 1380, 1391, 1402, 1411, 1424, 1431, 1440, 1451, 1460, 1503, 1516, 1523, 1532, 1543, 1552, 1559, 1572, 1581, 1592, 1603, 1618, 1631, 1646, 1657, 1669, 1678, 1689, 1698, 1707, 1713, 1731, 1738, 1751).

The ALJ acknowledged that "[b]efore the alleged onset date, the record reflects presentation to a psychiatric unit due to panic attacks. . . .  However, [plaintiff] testified that she was never admitted more than a few hours."  T. at 16 (citing T. at 74-75, 1043-53).  The ALJ stated that "[s]ince the alleged onset date, there is no evidence of extended periods of mental decompensation or significant instances of involuntary psychiatric holds."  Id. (citing T. at 1101-1755).  The ALJ also relied on the "September 2018 . . . consultative examin[ation indicating] that [plaintiff] had no limitations understanding, remembering, or applying simple directions and instructions, understanding, remembering, or applying complex directions and instructions, and using reasoning and judgment to make work-related decisions."  Id. (citing T. at 629).  "Moreover, the record suggests that her therapy sessions coupled with medication controlled her symptoms effectively, as treatment notes reflect persistent complaints of

anxiety with depression but providers noted symptoms were 'under control' and 'well controlled.'" Id. (citing T. at 359, 363, 468, 524, 541, 550, 583, 618). Finally, the ALJ stated that "at the hearing, [plaintiff] appeared as a reliable historian and she answered virtually all questions in an age-appropriate manner, which provides highly probative evidence about her ability to understand, remember, and apply information in unfamiliar settings." Id. (citing T. at 65-79).

The ALJ next determined that plaintiff had no limitations in her ability to interact with others. See T. at 16. The ALJ explained that "[a]t the hearing, the claimant endorsed anxiety with panic attacks, but did not identify any particular issues about getting along with others . . . [and] [a]s discussed . . ., across the period at issue, attendant providers diagnosed and treated her for anxiety and depression." Id. (citing testimony). The ALJ stated that "[n]evertheless, mental status exams regularly reflect unremarkable findings including proper orientation, normal speech, and normal eye contact." Id. To support this contention, the ALJ cited to the mental status examination he previously listed regarding plaintiff's "intact memory and intact thought process." Id. at 15-16. The ALJ again noted that "[b]efore the alleged onset date, the record reflects presentation to a psychiatric unit due to panic attacks . . . [but plaintiff] testified that she was never admitted more than a few hours." Id. at 16. "Since the alleged onset date, there is no evidence of extended periods of mental decompensation or significant instances of involuntary psychiatric holds." Id. at 16. Relying on the consultative examination, the ALJ noted that plaintiff "had no limitations interacting adequately with supervisors, coworkers, and the public." Id. (citing T. at 629). The ALJ repeated, verbatim, his determination that the record showed that plaintiff's symptoms were under

control with medication and therapy, and he recounted her demeanor at the hearing. See id.

The ALJ concluded that plaintiff had moderate limitations in her ability to concentrate, persist, and maintain pace. See T. at 17. The ALJ stated that "[a]t the hearing, [plaintiff] endorsed a history of concentration issues due to her mental health symptomatology . . . [as well as] experiencing panic attacks that could last twenty minutes to an hour, and these occurred about twice per month." Id.; see T. at 66, 74-75. The ALJ repeated plaintiff's providers' diagnoses of anxiety and depression, as well as the fact that after the alleged onset date, there were no "extended periods of mental decompensation or significant instances of involuntary psychiatric holds." Id. at 17. Citing to the same treatment notes previously listed, the ALJ stated that "mental status exams regularly reflect unremarkable findings including intact memory and intact thought process . . . [but] only fair attention/concentration." Id. The ALJ also noted that "treatment notes report persistent issues with concentration and insomnia." Id. (citing T. at 1200, 1208, 1218, 1226, 1234). The ALJ indicated that the consultative examination revealed "no limitation sustaining concentration and performing a task at a consistent pace." Id. (citing T. at 629). The ALJ restated his conclusions regarding plaintiff's "well controlled" symptoms and her presentation during the hearing. Id.

The ALJ determined that plaintiff had mild limitations in her ability to adapt or mange herself. See T. at 17. The ALJ explained that during the hearing, plaintiff "endorsed anxiety with depression and panic attacks to the point where she sometimes had trouble leaving the house for work[]" but she "did not identify any particular issues with personal care, managing finances, cooking, etc." Id.; see T. at 74-75. The ALJ

also indicated that plaintiff's consultative examination revealed "mild limitations regulating emotions, controlling behavior, and maintaining well-being, but [] no limitations maintaining personal hygiene and wearing appropriate attire, or being aware of normal hazards and taking appropriate precautions." Id. at 18 (citing T. at 629). Citing to the same treatment notes as listed for the other functional areas, the ALJ stated that plaintiff's "mental status exams regularly reflect unremarkable findings including proper orientation, normal speech, and normal eye contact." Id. at 17.  The ALJ again stated that plaintiff's providers treated her for anxiety and depression, she did not have extended periods of mental decompensation after the alleged onset date, her symptoms were "well controlled" with medication and therapy, and she appeared as a reliable historian and responded in an age-appropriate manner during her hearing.  Id. at 18.

As part of the ALJ's RFC determination, the ALJ found that "despite [plaintiff's] complaints across the longitudinal history, mental status exams regularly reflect unremarkable findings including intact memory and intact thought process."  T. at 20. Further, the ALJ stated that as to adaptation, social functioning and interaction, despite [plaintiff's] complaints about notable anxiety with panic attacks, mental status exams regularly reflect unremarkable findings including proper orientation, normal speech, and normal eye contact."  Id.  The ALJ concluded that "the only significant mental limitation involves her ability to concentrate and persist."  Id. at 20.  "Specifically, after a careful and measured review of the entire record," the ALJ found that plaintiff's "combination of severe mental impairments coupled with the moderate limitation in her ability to

concentrate, persist, or maintain pace alongside regular findings of fair attention/concentration restrict[ed] her to no fast-paced work." Id. at 20-21.

The ALJ reviewed the mental health opinions in the record. See T. at 21-23. Jeanne A. Shapiro, Ph.D., conducted plaintiff's consultative examination in September 2018. See id. a 626-30. Dr. Shapiro diagnosed plaintiff with unspecified depressive disorder. See id. at 630. Dr. Shapiro determined that plaintiff had mild limitations in her ability to regulate her emotions, control her behavior, and maintain her well-being, but that she was capable of managing money and otherwise had no limitations. See id. at 629. The ALJ explained that "[a]s to supportability, Dr. Shapiro referenced [plaintiff's] background, psychiatric history, medi[c]ations, current functioning, and mental status findings when reaching her opinion. With respect to consistency, Dr. Shapiro's opinion is generally consistent with the totality of evidence in the record." Id. at 21-22. The ALJ reiterated that "the record" suggested that plaintiff's symptoms were "well controlled" with medication and therapy and that her mental status examinations revealed "unremarkable findings including intact memory and intact thought process." Id. at 22. The ALJ explained that Dr. Shapiro's "no limitations" finding regarding plaintiff's ability to sustain concentration and perform at a consistent pace, "[wa]s inconsistent with the totality of evidence in the record. For example, mental status exams also document only fair attention/ concentration." Id. The ALJ concluded that "[s]uch facts are consistent with a moderate limitation in her ability to concentrate, persist, or maintain pace, which is reflected in the residual functional capacity above." Id. Therefore, the ALJ stated that "only to the extent consistent with the residual functional capacity is the opinion of Dr. Shapiro persuasive." Id.

14

The ALJ explained that state agency consultant J. Alpert, M.D., reviewed the record in October 2018 "and assessed severe affective disorder."  T. at 21 (citing T. at 99, 113).  Dr. Alpert determined that plaintiff had no limitations in her ability to understand, remember, or apply information, interact with others, or adapt or manage herself; and moderate limitations in her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."  Id. at 104.  The ALJ explained that "overall, Dr. Alpert found that [plaintiff] would have limits in her persistence and pace, but indicated that she could understand and carry out work tasks and procedures with an adequate level of persistence and pace."  Id. at 21 (citing T. at 103-104).  The ALJ noted that "[a]s to supportability, Dr. Alpert provided reference to allegations, medical documentation, and symptoms when reaching the findings.  With respect to consistency, the findings of Dr. Alpert are generally consistent with the totality of evidence in the record."  Id.  The ALJ reiterated that plaintiff's symptoms were controlled with medication and therapy, and her mental status examinations had unremarkable findings.  See id.  The ALJ also stated that the mental status examinations documenting "only fair attention/concentration . . . are consistent with both Dr. Alpert's findings as well as a moderate limitation in her ability to concentrate, persist, or maintain pace, which is reflected in the residual functional capacity above."  Id.  As such, the ALJ found Dr. Alpert's opinion to be persuasive.  See id.

The ALJ reviewed plaintiff's treating provider, Dr. Iosilevich's, October 2019 medical source statement.  See T. at 22-23.  Dr. Iosilevich explained that he had seen plaintiff "on and off since 2014" and that her diagnosis was "severe major depressive disorder without psychotic features[.]"  Id. at 817.  He determined that her prognosis

was "poor" and the "medical or clinical findings that support" the diagnosis were "[a]nxiety, loss of interest, general discontent, social isolation, difficulty getting consistent sleep and with diet, [and] lack of concentration[.]" Id.  He wrote that plaintiff was "unable to keep [a] schedule due to organization, mood,[] energy, unable to remain concentrated on topic[.]" Id. at 818.  Dr. Iosilevich concluded that plaintiff had moderate limitations in her ability to interact with others "due to anxiety and difficulty with focus" and in understanding and carrying out very short and simply instructions. Id. at 819-20. Plaintiff had marked limitations in her (1) ability to understand, remember, and apply information because of a "lack of focus, concentration and comprehension"; (2) ability to concentrate, persist, and maintain pace because she was "unable to remain on task"; (3) "understanding and memory" because she was "unable to remain goal oriented in regards to interaction/goals"; and (4) remembering locations and work-like procedures. Id. at 819-20.  Dr. Iosilevich concluded that plaintiff had extreme limitations in (1) her ability to adapt or manage herself because she was "unable to remain engaged in conversation, activities, [and] goals"; and (2) "understanding and carrying out detailed but uninvolved written or oral instructions[.]" Id. at 819-20.  Further, Dr. Iosilevich determined that plaintiff was able to "maintain attention and concentration before needing redirection or requiring a break" for less than fifteen minutes; she could "[s]ometimes, but not consistently" interact with the general public, coworkers, and supervisors; she would not be able to maintain regular attendance and punctuality; and she required enhanced supervision. Id. at 820.  Dr. Iosilevich explained that plaintiff's ability to interact with others was limited "due to worthlessness and anxiety [plaintiff] struggles in interactions[.]" Id. at 821.  He also noted that plaintiff would "[s]ometimes,

but not consistently" be able to maintain socially appropriate behavior but did not have the ability to respond appropriately to changes in work settings because she "gets too distracted [and] disoriented[.]"  Id.  Dr. Iosilevich concluded that plaintiff would be off task for more than twenty-five percent of a workday and miss four or more days of work per month.  See id.

The ALJ explained that "[a]s to supportability, Dr. Iosilevich's opinion is largely unsupported by his treatment records from St. Joseph's Behavioral Health.  For instance, despite [plaintiff's] complaints across the longitudinal history, mental status exams regularly reflect unremarkable findings including intact memory and intact thought process."  T. at 22 (citing T. at 393, 400, 407, 418, 425, 432, 717, 728, 739, 746, 753, 764, 771, 782, 789, 796, 807, 984, 1047).  Citing to the same records he referenced as a part of his step-two analysis, the ALJ stated that plaintiff's mental status examinations reflected "unremarkable findings including proper orientation, normal speech, and normal eye contact."  Id.  Further, the ALJ explained that "[w]ith respect to consistency, Dr. Iosilevich's opinion is largely inconsistent with the totality of evidence in the record.  For example, . . . Dr. Shapiro opined that [plaintiff] had no limitations in the majority of areas and only a mild limitation regulating emotions, controlling behavior, and maintaining well-being but appeared intellectually capable of handling money."  Id. at 23 (citing T. at 629-30).  As such, the ALJ found Dr. Iosilevich's opinion to be unpersuasive.  See id.

**2. Analysis**

Plaintiff identifies a second medical source statement from Dr. Iosilevich from 2018, that the ALJ did not discuss.  See Dkt. No. 11 at 6-7.  In this opinion, Dr.

Iosilevich noted plaintiff's diagnoses were "severe recurrent major depressive [disorder] without psychotic features [and] panic [disorder] w/out agoraphobia w/ severe panic attacks[.]"  T. at 381.  Plaintiff's symptoms included "low mood, low motivation, low energy, poor focus, poor concentration, panic attacks, cognitive distortions, tearful, poor memory, anhedonia, isolates self, poor/no goal oriented behavior, [and] difficulty to experiencing joy[.]"  Id.  In describing "any behavior suggestive of a significant psychiatric disorder," Dr. Iosilevich stated that there was a "[d]rastic reduction in [plaintiff] being able to function on personal time and called into work multiple times resulting in being fired 2017/2018[.]"  Id.  As for her mental status, Dr. Iosilevich listed the findings "of the most recent status examination" which indicated that plaintiff was depressed, cooperative, disheveled, anhedonic [sic], at times unable to interact due to crying . . . speech slow and mumbled, [t]hought process blocks perception: no disturbance . . . depressed[,]" poor attention, concentration, memory, and ability to perform calculations, deficient fund of knowledge, and fair insight and judgment.  Id. at 382.  Further, he explained that plaintiff "lays in bed most days.  Unable to engage in hobbies, Recently fired from work due to inability to show, No interest[.]"  Id.  Dr. Iosilevich noted that plaintiff is "unable to show, follow normal work activities, often crying inappropriately, withdrawal[,]" and she is unable to follow directions in a thirty- or sixty-minute counseling session.  Id. at 382-83.

Plaintiff asserts that the ALJ's failure to address the 2018 opinion "demands remand[.]"  Dkt. No. 11 at 13.  The Commissioner argues any error is harmless because "the ALJ's analysis of the October 2019 opinion can reasonably be applied to the near

identical opinion from August 2018 such that any oversight is not outcome determinative in this case."  Dkt. No. 14 at 12.

The regulations mandate that the ALJ "articulate in [the] determination or decision how persuasive [her or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."  20 C.F.R. §§ 404.1520c(b); 416.920c(b) (emphasis added).  If "a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis[.]"  Id. §§ 404.1520c(b)(1); 416.920c(b)(1). The ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative medical findings from one medical source individually."  Id. §§ 404.1520c(b)(1); 416.920c(b)(1).

Failure to consider a medical opinion as the regulations demand constitutes legal error, but is "subject to a harmless error analysis."  Maureen S. v. Comm'r of Soc. Sec., No. 5:20-CV-01158, 2022 WL 909219, at *4 (N.D.N.Y. Mar. 29, 2022) (quoting Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022)) (additional citation omitted).  Here, the ALJ did not reference, cite, or discuss Dr. Iosilevich's 2018 opinion, constituting legal error where the regulations require him to articulate his consideration of "all of the medial opinions" in the record.  20 C.F.R. §§ 404.1520c(b); 416.920c(b) (emphasis added); see Graciela S. v. Comm'r of Soc. Sec., No. 20-CV-6648 (FPG), 2022 WL 896764, at *2 (W.D.N.Y. Mar. 28, 2022) ("An ALJ's failure to comply with this rule warrants remand unless the error is harmless.").  As plaintiff states, the 2018 and 2019 opinions "are not identical."  Dkt. No. 17 at 3.  However, the opinions are similar enough that even if the

ALJ explicitly discussed the 2018 opinion, his decision would likely not have changed. "An ALJ's failure to properly consider a medical opinion is harmless error where the medical opinion is 'essentially duplicative' of other evidence, or is not 'significantly more favorable' to [the p]laintiff than other evidence considered by the ALJ, or was otherwise consistent with the ALJ findings." Tammy T. v. Kijakazi, No. 5:21-CV-1, 2022 WL 71995, at *13 (D. Vt. Jan. 7, 2022) (quoting Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)); but see Kelly S. v. Kijakazi, No. 3:20-CV-1232 (DJS), 2022 WL 279555, at *5 (N.D.N.Y. Jan. 31, 2022) ("[T]he medical opinion . . ., if accepted, would have materially changed the RFC and likely affected the ability of [the p]laintiff to find other work."); Holly S. v. Comm'r of Soc. Sec., No. 3:20-CV-597 (MAD/DEP), 2022 WL 580446, at *6 (N.D.N.Y. Feb. 25, 2022) (citation and quotation marks omitted) ("Several [more restrictive] findings occurred across multiple medical opinions.  It seems entirely plausible to this Court that any one of these limitations could have more than a negligible impact on . . . claimant's ability to perform the full range of work . . . .").

In both the 2018 and 2019 opinions, Dr. Iosilevich explained that plaintiff had severe problems in her ability to maintain attention and focus, memorize information, follow directions, and remain on task.  See T. at 381-84, 817-21.  Although the opinions are not identical, they opine similarly severe mental health limitations in the same areas of functioning which the ALJ considered and did not accept because he found the limitations to be "largely unsupported by" Dr. Iosilevich's treatment records and "inconsistent with the totality of the evidence in the record."  Id. at 22-23.  As the opinions come to extremely similar conclusions, the ALJ's failure to explicitly discuss the

2018 opinion or, at the very least, cite to it in his discussion of the 2019 opinion, is harmless error.[7]

The inquiry that necessarily follows is whether the ALJ appropriately analyzed the 2019 opinion under the relevant regulations.  Plaintiff asserts that the ALJ erred in his consistency and supportability analysis regarding Dr. Iosilevich's opinion because "other than acknowledging her fair attention and concentration findings on examination, the ALJ failed to discuss in any meaningful way the rest of the record demonstrating continued ongoing mental health systems which cannot be addressed by the simple limitation of 'no fast-paced work.'"  Dkt. No. 11 at 14.  Further, plaintiff contends that "[t]he ALJ's cherry-picking of 'normal thought process, proper orientation, normal speech, and normal eye contact' while ignoring she had ongoing panic attacks, conflicts with others, anxiety, fatigue and sleep disturbance, low motivation and energy poor memory, and would self isolate/be avoidant, is an impermissible evaluation of the evidence."  Id.

"Cherry picking 'refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.'"  Pamela P. v. Saul, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (quoting Dowling

---

[7] In her reply, plaintiff distinguishes the opinions by stating that "they are on completely different forms. . . .  The August 2018 opinion details clinical findings as of August 2018, precipitating factors, objective findings, as well as detailed analysis in the four categories of the PRT analysis. . . .  The October 2019 opinion describes her symptoms and objective findings in 2019, detailed limitations relating to the PRT categories, and her functionality in terms of memory as well as her time off task and work absences."  Dkt. No. 17 at 3.  The Court agrees and acknowledges that the two opinions are not identical, however, the 2018 opinion does not identify any more severe limitations than the 2019 opinion such that the ALJ's explicit consideration of the 2018 opinion would not have changed the outcome.  See T. at 381-84, 817-21; see also Fiducia v. Comm'r of Soc. Sec., No. 1:16-CV-1317 (GTS), 2017 WL 4513405, at *4 (N.D.N.Y. Oct. 10, 2017) (collecting cases) ("This Court and others have recognized that failure to consider or weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the outcome.").

v. Comm'r of Soc. Sec., 5:14-CV-0786 (GTS/ESH), 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015)).  "An ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error."  Robin P. v. Comm'r of Soc. Sec., No. 1:20-CV-863 (TJM), 2022 WL 593612, at *9 (N.D.N.Y. Feb. 28, 2022) (citations and quotation marks omitted); see Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (citations omitted) ("Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all medical evidence in a claimant's favor.").

Throughout the ALJ's decision, he acknowledged that plaintiff was diagnosed and treated for anxiety and depression; "[b]efore the alleged onset date, the record reflects presentation to a psychiatric unit due to panic attacks[]"; plaintiff "endorsed experiencing panic attacks that could last twenty minutes to an hour, and these occurred twice per month[]"; she "endorsed a history of concentration issues due to her mental health symptomology"; she "endorsed anxiety and depression and panic attacks to the point where she sometimes had trouble leaving the house for work"; "mental status exams [] document only fair attention/concentration[]"; and "treatment notes report persistent issues with concentration and insomnia."  T. at 15-17.  The ALJ also noted that plaintiff's "mental status exams regularly reflect unremarkable findings including proper orientation, normal speech, and normal eye contact[]"; plaintiff was never admitted to a psychiatric unit for more than a few hours and "[s]ince the alleged onset date, there [wa]s no evidence of extended period of mental decompensation or significant instances of involuntary psychiatric holds[]"; therapy and medications controlled her symptoms; she was a reliable historian and answered questions during

her hearing in an age-appropriate manner; her mental status examinations showed intact memory and thought process; and plaintiff did not identify any issues with personal care, managing finances, or cooking.  Id. at 15-17.

The ALJ cited nearly every mental health examination in the record which, as he explained, showed that plaintiff had intact memory, thought content, and thought process, her eye contact was normal, and she was oriented.  See T. at 16-17.  The ALJ also cited to those same examinations which revealed "only fair attention/concentration."  Id. at 17.  The ALJ did not explain that these records also consistently revealed only fair insight and judgment.  See, e.g., id. at 753, 764, 771, 1211, 1221, 1269, 1304, 1460, 1581, 1592, 1603, 1631, 1721.  Further, records that the ALJ cites indicating that plaintiff had unremarkable mental status examinations, also state that her "speech is tangential.  She is slowed and withdrawn.  Thought content is paranoid. . . . [Her] affect is flat, distant and she seems severely depressed.  At this point in time, I do not feel comfortable sending her home even though she denies any suicide or homicidal ideation."  Id. at 927, 984.  Moreover, as explained, the ALJ did not explicitly discuss Dr. Iosilevich's 2018 medical opinion.  See supra at 19-20.

Nevertheless, as the ALJ stated, records from 2015 to 2018 indicated that plaintiff's anxiety and depression symptoms were controlled by her medication and counseling.  See id. at 16, 359, 363, 468, 541, 550, 583, 618.  Additionally, Dr. Alpert, the state agency consultant, explicitly noted his review of Dr. Iosilevich's 2018 opinion and the conclusions that plaintiff "is unable to follow directions, has limited concentration and persistence, [] has limited social interaction, and [her] adaption is limited."  T. at 102.  In the additional explanation section of the determination, Dr. Alpert stated that in

plaintiff's mental status examinations "[h]er insight and judgment are estimated to be fair." Id. at 104. Dr. Alpert also explained that plaintiff's "social worker writes that [plaintiff] was calling in sick when she was depressed and this is causing her problems on the job[,]" and plaintiff's psychiatrist[8] indicated that she "called into work multiple times which resulted in her being fired. She is said to have a loss of memory, focus, attention, ability to be goal oriented and an increase in panic attacks." Id. at 105. Dr. Alpert noted that plaintiff's "memory has been consistently noted to be normal and her concentration is consistently noted to be fair in the progress notes. [Dr. Iosilevich] writes in this note that her concentration is poor and memory is poor even with repetition." Id. "[Plaintiff] is said to have a deficient fund of knowledge which is at odds with the pathology of the data on file including her educational achievement and the fact that she was never in special education classes." Id. In summation, Dr. Alpert concluded that plaintiff "would have limits in her persistence and pace[.]" Id. The ALJ found Dr. Alpert's opinion to be persuasive because he "provided reference to allegations, medical documentation, and symptoms when reaching the findings[,]" and relied on it when determining plaintiff's RFC. Id. at 21.

"A non-examining state agency consultant's opinion may be relied upon where it is supported by other record evidence." Hansen-Nilsen v. Comm'r of Soc. Sec., No. 5:15-CV-1258 (GTS/WBC), 2017 WL 913933, at *5 (N.D.N.Y. Feb. 7, 2017), report and recommendation adopted, 2017 WL 913639 (N.D.N.Y. Mar. 6, 2017) (citing Frey ex rel. A.O. v. Astrue, 485 F. App'x. 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if

---

[8] Dr. Alpert refers to Dr. Iosilevich's 2018 opinion as a "DDD-3883[.]" T. at 105. "DDD-3883" appears at the bottom each page of Dr. Iosilevich's 2018 opinion. See id. at 381-84.

supported by medical evidence in the record."); <u>Swan v. Astrue</u>, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")).

Although the ALJ could have explicitly stated that plaintiff's insight and judgment were consistently "fair" and he should have mentioned Dr. Iosilevich's 2018 opinion in the decision, the ALJ did not cherry pick the record and appropriately relied on Dr. Alpert's opinion.  T. at 104-105; <u>see id.</u> at 15-23; <u>see</u> <u>Brault</u>, 683 F.3d at 448 (internal quotation marks and citations omitted) ("An ALJ does not have to state on the record every reason justifying a decision. . . . An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").  The ALJ acknowledged the positive and negative findings in the record and relied on Dr. Alpert's opinion which in itself referenced various positive and negative findings.  <u>See id.</u> at 15-23.  The ALJ also analyzed the supportability of Dr. Iosilevich's treatment records with his 2019 opinion as well as the consistency of the "totality of evidence" with the opinion.  <u>Id.</u> at 22-23.

As plaintiff states, there are records indicating plaintiff's reports of panic attacks, memory issues, anxiety, low energy, decreased concentration, etc.  <u>See</u> Dkt. No. 11 at 11.  There are also numerous examinations indicating fair concentration, insight, and judgment.  <u>See id.</u>  Further, the ALJ explained Dr. Iosilevich's opined limitations but did not reiterate the handwritten explanations that he included for each limitation.  <u>See</u> T. at 22-23.  Dr. Iosilevich explained that the severe limitations existed not because of memory problems or a lack of thought process but because plaintiff lacked attention and concentration.  <u>See id.</u> at 817-21.  Dr. Iosilevich's treatment notes also endorsed panic

attacks, low self-worth, difficulty concentration and low mood.  See, e.g., id. at 730, 755, 773, 779, 786.  It would, therefore, appear that Dr. Iosilevich's treatment notes correlate to his opinion.  See id. at 730, 755, 773, 779, 786, 817-21, 972, 979.  However, the ALJ determined that the opinion is not entirely, but, "largely unsupported" by the treatment notes, included a limitation related to plaintiff's attention and concentration, and relied on Dr. Alpert's review of the entire record, the normal parts of plaintiff's examinations, and her reports that her symptoms were under control.  Id. at 22; 15-21.  Although there is evidence supporting Dr. Iosilevich's opinion in the record, and in turn, evidence supporting plaintiff's contentions, because there is substantial evidence in the record supporting the ALJ's conclusion and the Court can glean his rationale, remand is not warranted.  See Rockwood v. Astrue, 614 F. Supp. 2d 252, 266 (N.D.N.Y. 2009) (quoting Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992)) ("If supported by substantial evidence, the Commissioner's finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'").

Plaintiff next argues that the ALJ's conclusion to limit plaintiff to "no fast-paced work" was not supported by the record because "[n]one of the sources found persuasive by the ALJ offered a limitation to no fast-paced work.  The ALJ plainly found that these opinions did not capture the extent of her mental limitations but then impermissibly relied on his own lay opinion of the mental health evidence . . . ."  Dkt. No. 11 at 16.

The ALJ found the opinions of the state agency consultant to be persuasive and the consultative examiner's opinion to be persuasive "only to the extent consistent with the residual functional capacity[.]"  T. at 21-22.  The consultative examiner found that

plaintiff's only limitations were "mild limitations in regulating emotions, controlling behavior, and maintaining personal well-being." Id. at 629.  The ALJ found the lack of a limitation concerning attention and pace to be "inconsistent with the totality of the evidence in the record . . . [including the] mental status exams [] document[ing] only fair attention/concentration." Id. at 22.  Dr. Alpert determined that plaintiff had moderate limitations in her ability to concentrate and maintain pace but could "understand and carry out work tasks and procedures with an adequate level of persistent and pace, relate adequately with others and adapt to changes on the job adequately." Id. at 105.

"Importantly, the ALJ's RFC determination d[oes] not need to perfectly correspond with any one medical opinion; rather, the ALJ [i]s entitled to weigh the record as a whole in determining plaintiff's RFC." Kevin Thomas C. v. Comm'r of Soc. Sec., No. 5:20-CV-1037 (CFH), 2022 WL 539392, at *8 (N.D.N.Y. Feb. 23, 2022) (citing Jeanette S. U. v. Saul, No. 3:18-CV-01045 (DNH/TWD), 2020 WL 1494168, at *5 (N.D.N.Y. Mar. 11, 2020), report and recommendation adopted, 2020 WL 1493917 (N.D.N.Y. Mar. 26, 2020) ("[I]n formulating [the p]laintiff's RFC, the ALJ was not required to accept every limitation in the opinions of [the] treating providers ... nor craft an RFC that mirrored any of the medical opinions.")).  However, "ALJs are not medical professionals, and, therefore, are 'not qualified to assess a claimant's RFC on the basis of bare medical findings.'" Renee L. v. Comm'r of Soc. Sec., No. 5:20-CV-00991 (TWD), 2022 WL 685285, at *5 (N.D.N.Y. Mar. 8, 2022) (quoting Ortiz v. Colvin, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)).

The ALJ reviewed the entire record and determined that "the only significant mental limitation involves her ability to concentrate and persist." T. at 20. "Specifically, . . . [plaintiff's] combination of severe mental impairments coupled with the moderate limitation in her ability to concentrate, persist, or maintain pace alongside regular findings of fair attention/concentration restricts her to no fast-paced work. Otherwise, the evidence of record does not support any additional mental limitations or restrictions." Id. at 20-21. This conclusion is supported by Dr. Alpert's conclusion that plaintiff "would have limits in her persistence and pace[.]" Id. at 105. Although no medical opinion stated that plaintiff should be limited to "no fast-paced work[,]" the limitation is supported by Dr. Alpert's opinion and the mental status examinations indicating that plaintiff had fair attention and concentration. Id. at 20; 17. To the extent plaintiff asserts that her RFC should be more limiting, the only opinions in the record recommending greater limitations are Dr. Iosilevich's, which, as explained, the ALJ discounted and found to be unpersuasive. See Dkt. No. 11 at 9-16. The ALJ was not reviewing raw medical data and crafting plaintiff's RFC; rather, based on the examination findings and opinions, he determined that plaintiff was limited in her ability to work at a fast pace. See Terri G. v. Comm'r of Soc. Sec., No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *9 (N.D.N.Y. Mar. 22, 2019) ("[T]he ALJ's resolving such conflicts in the medical evidence is not interpreting raw medical data or substituting his own lay opinion for that of a medical professional.").

As the ALJ reviewed the entire record, explained his rationale, and the conclusions are based on substantial evidence, remand is not warranted on this ground. Cf. Anzola v. Berryhill, No. 18-CV-11217 (VSB/DCF), 2019 WL 10630956, at *19

(S.D.N.Y. Dec. 20, 2019), report and recommendation adopted, 2020 WL 5646329 (S.D.N.Y. Sept. 21, 2020) ("[W]hile the Record documents that [the p]laintiff had some difficulties with concentration and sleep, supporting a finding that he was impaired in the domain of concentration, persistence, or pace, substantial evidence in the Record also supports the ALJ's determination that [the p]laintiff's impairment in this domain was not more than moderate and did not prevent [the p]laintiff from performing medium, unskilled work.").

### B. Consistency Determination

Plaintiff contends that the ALJ's determination as to the consistency of plaintiff's allegations with the objective record is flawed because the ALJ did not consider plaintiff's "strong work history."  Dkt. No. 11 at 21-23.  Plaintiff also reasserts the contentions she made regarding the weighing of Dr. Iosilevich's opinion because "the ALJ's findings about [p]laintiff's . . . limitations and the medical opinions supporting those limitations are, naturally, also attacks on the ALJ's credibility finding, since the issue of the weighing of opinion evidence, determining an RFC, and the evaluation of whether [] [plaintiff's] self-described limitations are consistent with the record are intertwined."  Id. at 21.  The Commissioner contends that "[t]he ALJ considered [p]laintiff's subjective complaints in accordance with the relevant  regulations and SSR 16-3p."  Dkt. No. 14 at 13.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir.

2011) (citing 20 C.F.R. § 404.1529(b)); see SSR 16-3p: Titles II and XVI Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *1-2 (Oct, 25, 2017).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  Genier, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(a)).  "While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence."  Michael H. v. Saul, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *10 (N.D.N.Y. June 9, 2021) (citing 20 C.F.R. § 404.1529(c)(2)).  The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  Genier, 606 F.3d at 49 (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).

"Under SSR 16-3p, when evaluating a claimant's symptom intensity, '[t]he ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record.'"  Kearney v. Berryhill, No. 1:16-CV-00652 (MAT), 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (alteration in original) (quoting Vered v. Colvin, No. 14-CV-4590 (KAM), 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017)).  The ALJ must "clearly demonstrate[] [that] he considered the entire case record . . . as required by SSR 16-3p."  Id. ("The ALJ provided significant detail regarding the basis of

this finding, noting there is little objective evidence of record to support the alleged severity of the symptoms [the] [p]laintiff described at the hearing."); see, e.g., Michael H., 2021 WL 2358257, at *11 (affirming the ALJ's determination where the ALJ "examine[d] inconsistencies in the record" between the plaintiff's testimony and the medical records and opinions).

The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" T. at 19.  In reviewing plaintiff's mental health history, the ALJ acknowledged that "[a]t the hearing [plaintiff] endorsed a history of concentration issues due to her mental health symptomatology. . . .  In addition, she endorsed experiencing panic attacks that could last twenty minutes to an hour, and these occurred about twice per month."  Id. at 17.  The ALJ recognized that plaintiff stated that her "anxiety and depression with panic attacks" sometimes caused her "trouble leaving the house for work."  Id.  The ALJ also reviewed the mental status examinations which showed positive and negative findings, as well as the medical opinions in the record.  See id. at 15-22.

Not explicitly reiterated by the ALJ was plaintiff's verbatim hearing testimony related to her prior employment and what underlie Dr. Alpert's "reference[d] allegations, medical documentation, and symptoms[.]"  T. at 21.  Dr. Alpert explained in the initial disability determination that plaintiff "does describe having problems calling in sick to work when she felt depressed.  She had not reported or been noted to have problems functioning while she was at work."  Id. at 104.  Dr. Alpert also reiterated Dr. Iosilevich's

notation in his 2018 opinion that plaintiff "called into work multiple times which resulted in her being fired." Id. at 105.  During the hearing, plaintiff explained that she "was laid off from a teaching assistant job. . . . And [she] believe[d] that the reason was because of severe depression.  Because [she] missed an awful lot of work.  And [she] had been given a verbal and written notice.  But then, they had just not taken [her] back in the fall." Id. at 66.  Further, she quit her job at a daycare center "[b]ecause it was just too much for [her]." Id. at 67.  Plaintiff explained that her anxiety and depression would cause her to "get like, really nervous, and almost, like, have a panic attack while getting ready for work. . . . [She] would just have a lot of anxiety, but usually [she] would make [her]self get to work.  But then, sometimes at work [she would] have, like, a panic attack." Id. at 74.  She testified that her panic attacks would cause "hyperventilating and crying, and just not being able to relax and definitely not be able to concentrate." Id. at 75.

As an initial matter, the ALJ appropriately considered the subjective and objective record in accordance with SSR 16-3p when determining that plaintiff's subjective allegations were "not entirely consistent with the medical evidence" because he reviewed the "entire case record[.]"  T. at 19; see Kearney, 2018 WL 5776422, at *6.  The record revealed that throughout her treatment with Dr. Iosilevich, plaintiff consistently presented with depression and anxiety and had fair attention, concentration, insight, and judgment.  However, her memory, orientation, thought process, eye contact, speech, and thought content were normal.[9]  Further, plaintiff

---

[9] The ALJ accurately cited plaintiff's mental status examinations showing positive and negative findings. See T. at 15-18, 393, 400, 407, 418, 425, 432, 717, 728, 739, 746, 753, 764, 771, 782, 789, 796, 807, 927, 984, 1047, 1203, 1211, 1221, 1229, 1237, 1245, 1255, 1269, 1275, 1283, 1293, 1304, 1313, 1326, 1337, 1352, 1365, 1380, 1391, 1402, 1411, 1424, 1431, 1440, 1451, 1460, 1503, 1516, 1523, 1532,

reported "that her symptoms are under control"; her depression was "[w]ell controlled with Wellbutrin, Zoloft and Vistaril"; and her "condition is controlled[.]"  Id. at 359, 363, 468, 524, 541, 550, 583, 618.

To the extent plaintiff argues that the ALJ erred by failing to consider her work history, the previous regulations assessed a plaintiff's "credibility" and "a 'good work record [wa]s entitled to substantial credibility when claiming an inability to work,' [but] the disability must still be medically supported in the record."  Searles v. Comm'r of Soc. Sec., No. 1:14-CV-1124 (TJM/TWD), 2015 WL 9582726, at *12 (N.D.N.Y. Nov. 30, 2015), report and recommendation adopted, 2015 WL 9581830 (N.D.N.Y. Dec. 30, 2015) (quoting Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983)).  "Courts in this Circuit have held that Rivera does not compel an ALJ to find a plaintiff substantially credible based upon the plaintiff's work record alone."  Id. (collecting cases).  The regulations no longer require an ALJ to assess the "credibility" of a plaintiff, but instead require the ALJ to compare the plaintiff's complaints related to his or her symptoms against the objective record.  See Nicole R. T. v. Comm'r of Soc. Sec., No. 5:20-CV-1015 (DEP), 2022 WL 866551, at *12 (N.D.N.Y. Mar. 23, 2022) (noting that the plaintiff's argument that the ALJ erred in failing to consider her work history "appears to represent a remnant of when the agency assessed a claimant's 'credibility,' a standard that is no longer in use."); see also Michael H. v. Saul, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *11 (N.D.N.Y. June 9, 2021) ("[T]he ALJ's determination as to whether [the p]laintiff is to be awarded benefits is focused primarily on the medical record, and a

---

1543, 1552, 1559, 1572, 1581, 1592, 1603, 1618, 1631, 1646, 1657, 1669, 1678, 1689, 1698, 1707, 1713, 1731, 1738, 1751.

party's work history is just one factor to be considered and it alone has little effect on the weighing of a [p]laintiff's credibility.").

The inquiry thus turns on whether the ALJ fully evaluated the "intensity and persistence" of plaintiff's symptoms alongside the entire record.  SSR 16-3p, 2017 WL 5180304, at *3; cf. Patrick v. Colvin, No. 13-CV-2174 (SJF), 2015 WL 1469270, at *16 (E.D.N.Y. Mar. 30, 2015) (remanding because "the ALJ provided no discussion of [the] plaintiff's twenty-year work history in the context of his credibility analysis."); compare Milien v. Astrue, 10-CV-2447 (JG), 2010 WL 5232978, at *10 (E.D.N.Y. Dec.16, 2010) (remanding where the plaintiff "had an extensive track record of consistent employment, 22 years of which were at the same company . . . [and] she testified that she left her job only when 'they changed [her] medication[,]' . . . strongly suggest[ing] that she left her long-standing place of employment only when her symptoms took a dramatic turn for the worse . . . [but the] ALJ . . . failed to mention her work history in the context of his credibility determination."), with Morrisson v. Comm'r of Soc. Sec., No. 1:18-CV-0531 (CJS), 2020 WL 812926, at *10 (W.D.N.Y. Feb. 19, 2020) ("[I]t is clear that the ALJ did not ignore or overlook [the p]laintiff's work history.  As the ALJ noted in his decision, 'the claimant's employment and earnings record shows he performed the job [with the Social Security Administration] successfully over many years before the disagreement' with his supervisor that led to his alleged decompensation.").

Here, the ALJ sufficiently considered plaintiff's work history in conjunction with the entire record.  The ALJ (1) acknowledged plaintiff's testimony that she had panic attacks that would result in a loss of concentration and trouble leaving the house to go to work, (2) relied on Dr. Alpert's opinion which noted plaintiff's reports and Dr.

Iosilevich's reiteration that she was fired because of missing work, and (3) recounted the time plaintiff spent at her past jobs as well as her earnings from each.  See T. at 17-26; see also Herring v. Comm'r of Soc. Sec., No. 18-CV-0996L, 2020 WL 1062893, at *9 (W.D.N.Y. Mar. 5, 2020) (explaining that the ALJ mentioned the plaintiff's pension, "that she worked at substantial gainful activity levels foe multiple years," and cited to earning records, such "that that the ALJ was aware of Herring's work history and factored it, along with several other considerations, into his disability determination[.]"); Nicole R. T., 2022 WL 866551, at *12 ("Whether the claimant, in the past, had a stellar work history or was unemployed no longer has much reasonable utility in this assessment because it ultimately speaks to the claimant's work ethic in the past as opposed to whether his or her symptoms during the relevant period are consistent with the other evidence.").  Accordingly, remand is not warranted on this ground.

### C. Past Relevant Work Determination

Plaintiff argues that the ALJ erred in concluding that plaintiff could perform past relevant work because he did not acknowledge that "conflicts exist between the information about th[e] job[s] in the DOT and the VE's testimony, which also conflicts with common sense."  Dkt. No. 11 at 17.  Specifically, plaintiff asserts that plaintiff's past relevant work as a "medical transcriber and child daycare worker require *at least some* fast-paced work."  Id. at 19.  The Commissioner argues that the ALJ's determination is supported by substantial evidence because neither job description as outlined in the DOT "reference[s] [] any fast-paced work[.]"  Dkt. No. 14 at 16.  The Commissioner also asserts that the ALJ appropriately relied on the VE's testimony.  See id. at 16-17.

At step four, the ALJ concluded that plaintiff was "capable of performing past relevant work (PRW) as a Medical Transcriber, DOT 203.582-058, sedentary, skilled (SVP 5, performed light), and as a Child Daycare Worker, DOT 359.677-018, light, semiskilled (SVP 4, performed medium). This work does not require the performance of work-related activities precluded by [plaintiff's] residual functional capacity." T. at 25. During the hearing, the ALJ asked the VE whether a hypothetical plaintiff who could perform medium work with no fast-paced production could perform plaintiff's past work. See id. at 84-85. The VE responded that the hypothetical plaintiff could perform both jobs "as [] generally performed and as [plaintiff] performed it." Id. at 85. Following plaintiff's counsel's questions, the VE also stated that her "testimony was based on the DOT and the SCO, with a few exceptions. Those publications do not specifically address fast-paced production work. Nor do they address employer tolerance of off-task behavior or absenteeism. My response to those elements of hypotheticals are based on my education, professional training, and experience . . . ." Id. at 87. At the end of the hearing, the ALJ asked the VE whether the testimony was "consistent with the Dictionary of Occupational Titles and its companion publication?" Id. at 89. The VE answered, "It has been. With the exception that I've already cited with regard to fast-paced production work, employer tolerance for off-task behavior, and absenteeism. And again, my response was based on my education, professional training, and experience." Id. In his decision, the ALJ reiterated the VE's testimony and stated that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is fully reasonable and consistent with the information contained in the DOT[.]" Id. at 26.

The DOT description for a day care worker and medical transcriber, respectively, are as follows:

> Organizes and leads activities of prekindergarten children in nursery schools or in playrooms operated for patrons of theaters, department stores, hotels, and similar organizations: Helps children remove outer garments.  Organizes and participates in games, reads to children, and teaches them simple painting, drawing, handwork, songs, and similar activities.  Directs children in eating, resting, and toileting.  Helps children develop habits of caring for own clothing and picking up and putting away toys and books.  Maintains discipline.  May serve meals and refreshments to children and regulate rest periods.  May assist in preparing food and cleaning quarters.
>
> Operates typewriter or word processor/computer to transcribe letters, reports, or other recorded data heard through earphones of transcribing machine: Inserts cassette tape into cassette player or positions tape on machine spindle and threads tape through machine.  Positions earphones on ears and presses buttons on transcribing machine to listen to recorded data.  Turns dials to control volume, tone, and speed of voice reproduction.  Depresses pedal to pause tape.  Types message heard through earphones.  Reads chart prepared by dictator to determine length of message and corrections to be made.  May type unrecorded information, such as name, address, and date.  May keep file of records.  May receive and route callers[.]

DOT 359.677-018 Nursery School Attendant, 1991 WL 672970 (4th ed. 1991); DOT 203.582-058 Transcribing-machine Operator, 1991 WL 671701 (4th ed. 1991).

Neither DOT description references the pace of the work plaintiff would be required to perform.  See DOT 359.677-018; 203.582-058.  As the Commissioner explains, this Court has rejected a similar argument to the one plaintiff makes here where "none of the [DOT's] listings of requirements for the above jobs indicates a need to work at a fast pace.  Consequently, there is no basis for a court to conclude that jobs identified by the vocational expert conflict with [the] residual functional capacity rating or the [DOT]."  Walker v. Colvin, No. 5:12-CV-483 (GLS/ESH), 2013 WL 5434065, at *12 (N.D.N.Y. Sept. 27, 2013); see also Honora F. v. Comm'r of Soc. Sec., No. 8:20-CV-548

(TWD), 2021 WL 4477091, at *3 (N.D.N.Y. Sept. 30, 2021) ("find[ing] the Commissioner's Step 5 findings [to be] supported by substantial evidence, and correct legal principles were applied" in part because "the ALJ expressly stated he determined, 'pursuant to SSR 00-4p . . . that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.'").

Here, the DOT descriptions for both positions do not describe a pace requirement, the VE testified that she based her conclusions on her expertise, and the ALJ found that pursuant to SSR 00-4p, the VE's testimony was consistent with the DOT. The Court finds no error in these conclusions and remand is not warranted on this ground.  See, e.g., Irene v. Berryhill, No. 6:18-CV-00038 (BKS), 2019 WL 1349560, at *25 (N.D.N.Y. Mar. 26, 2019).

### VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 10, 2022
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge